Case No. 24-5169

# THE UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

―――――――――――――――――――――――――――

**ESTATE OF ANTHONY RAY LOPEZ SR, et al.**

*Plaintiffs-Appellants,*

**v.**

**CITY OF ONTARIO, et al.**

*Defendants- Appellees*

―――――――――――――――――――――――――――

On Appeal from the United States District Court
for the Central District of California
The Honorable District Judge Sunshine S. Sykes
Case No. 5:23-cv-02304-SSS-SPx

―――――――――――――――――

**APPELLANT'S OPENING BRIEF**

―――――――――――――――――

Christian Contreras, Esq.  Humberto M. Guizar, Esq.
*CC@Contreras-Law.com*  *HGuizar@GHCLegal.com*
**LAW OFFICES OF CHRISTIAN CONTRERAS**  **LAW OFFICES OF HUMBERTO GUIZAR**
**PROFESSIONAL LAW CORPORATION**  **A PROFESSIONAL CORPORATION**
360 E. 2nd St., 8th Floor  3500 W. Beverly Blvd.,
Los Angeles, California 90012  Montebello, California 90640
Tel: (323) 435-8000  Tel: (323) 725-1151

Attorneys for Plaintiffs-Appellants, Estate of Anthony Ray Lopez Sr. et al.

# TABLE OF CONTENTS

INTRODUCTION ................................................................................1

STANDARD OF REVIEW ................................................................5

STATEMENT OF THE CASE ..........................................................6

I.     STATEMENT OF FACTS .........................................................6

     A. Background on Storm Drains/Flood Channels in the City of Ontario and County of San Bernardino....................................................6

     B. The Storm Drain/Flood Channel in Question ................................................................................7

     C. On November 8, 2022, Decedents were in the SUBJECT STORM DRAIN and Appellees-Defendants' Conduct Cause Decedents to be Swept Away and Killed by Waters ............................................8

     D. Defendant-Appellee BRENDON BIGGS, as the Chief Flood Control Engineer, Acted with Deliberate Indifference when the Operated and Controlled the Flood Channels During the Incident ...........................13

II.    PERTINENT PROCEDURAL HISTORY .............................................20

SUMMARY OF THE ARGUMENT ..................................................24

ARGUMENT ...................................................................................25

I.    THE DISTRICT COURT ERRED BY DISMISSING PLAINTIFFS-APPELLANTS STATE LAW CLAIMS IN FINDING THAT GOVERNMENT CODE SECTIONS 840 AND 815.2 APPLIED.................25

     A. The District Court Erred By Dismissing Plaintiffs-Appellants State Law Claims In Finding That Government Code Sections 840 Applied ................................................................................26

B.The District Court Further Erred because Based upon Statutory Interpretation, Section 840 does not Apply ............................................32

C.The District Court Abused its Direction by not Granting Plaintiffs-Appellants Leave to Amend to Allege that Section 840.2 Applied.....35

II.  THE DISTRICT COURT ERRED BY DISMISSING PLAINTIFFS-APPELLANTS' MUNICIPAL LIABILITY (*MONELL*) CLAIMS ...............38

A.The District Court Erred by Finding that Plaintiffs-Appellants did not Plead a Policy, Custom or Practice ...................................................41

B.The District Court Erred by Finding that Plaintiffs-Appellants did not Plead Sufficient Facts to Establish a Pattern....................................44

C.The District Court Erred by Failing to Consider Other Monell Theories, Particularly the Failure to Train Theory ...............................48

III.  THE DISTRICT COURT ERRED BY DISMISSING PLAINTIFFS-APPELLANTS INDIVIDUAL SECTION 1983 CLAIMS............................51

CONCLUSION .................................................................................................61

FED. R. APP. 32(A)(7)(C) AND CIRCUIT RULE 32-1 CERTIFICATE OF COMPLIANCE..................................................................................................62

STATEMENT OF RELATED CASES ............................................................63

CERTIFICATE OF SERVICE .........................................................................64

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                          **Page(s)**

*Bd. of Cnty. Cmm'rs v. Brown,*
   (1997) 520 U.S. 397 ...............................................................................50, 52

*Benavidez v. County of San Diego,*
   (9th Cir. 2021) 993 F.3d 1134................................................................5

*Blankenhorn v. City of Orange,*
   (9th Cir. 2007) 485 F.3d 463................................................................49

*City of Canton v. Harris,*
   (1989) 489 U.S. 378...........................................................................48, 50

*Connick v. Thompson,*
   (2011) 563 U.S. 51 ...........................................................................48, 50

*Coronavirus Rep. v. Apple, Inc.,*
   (9th Cir. 2023) 85 F.4th 948 ..................................................................5

*Ebner v. Fresh, Inc.,*
   (9th Cir. 2016) 838 F.3d 958.................................................................5

*Gibson v. United States,*
   (9th Cir. 1986) 781 F.2d 1334...............................................................41

*Hunter v. Cnty. of Sacramento,*
   (9th Cir. 2011) 652 F.3d 1225...............................................................47

*Jarboe v. Cnty. of Orange,*
   (C.D. Cal. July 29, 2010) No. SACV0500202JVSANX, 2010 WL 11678244 44

*L.W. v. Grubbs ("Grubbs II"),*
   (9th Cir. 1996) 92 F.3d 894....................................................................52

*Lee v. City of Los Angeles,*
   (9th Cir. 2001) 250 F.3d 668..................................................................49

*Longfellow v. Cnty. of San Luis Obispo,*
   (1983) 144 Cal. App. 3d 379 .................................................................31

*Meehan v. County of Los Angeles,*
   (9th Cir. 1988) 856 F.2d 102..................................................................44

*Menotti v. City of Seattle,*
   (9th Cir. 2005) 409 F.3d 1113.....................................................41, 42, 45, 46

iii

*Monell v. Department of Social Services of the City of New York,*
    436 U.S. 658 ................................................................................41
*Nadell v. Las Vegas Metropolitan Police Dept.,*
    (9th Cir. 2001) 268 F.3d 924 ....................................................47
*Nyarecha v. Cnty. of Los Angeles,*
    (9th Cir. Oct. 17, 2024) 2024 WL 4511616 .............................46
*Pembaur v. City of Cincinnati,*
    (1986) 475 U.S. 469 ...................................................................41
*Trevino v. Gates,*
    (9th Cir. 1996) 99 F.3d 911 .......................................................44
*United States v. Neal,*
    (9th Cir.2015) 776 F.3d 645 .................................................32, 33
*United States v. United Healthcare Ins. Co.,*
    (9th Cir. 2016) 848 F.3d 1161 .....................................................6
*Van Kempen v. Hayward Area Park, Etc. Dist,*
    (1972) 23 Cal.App.3d 822 ......................................................29, 30

## STATUTES

Cal. Gov. Code Section 840.2 ........................................................35, 36
Cal. Gov. Code Section 831.2 ..............................................................34
Cal. Gov. Code Section 831.21 ............................................................33
Cal. Gov. Code Section 835 .................................................................27
Cal. Gov. Code Section 840.2 ..............................................................37
Cal. Gov. Code Section 840 .................................................................25
Cal. Gov. Code Section 840 ...........................................................4, 24, 25, 26

## FEDERAL RULES

Federal Rules of Appellate Procedure Rule 32 .................................................62

## **INTRODUCTION**

This is a civil rights matter concerning the tragic deaths of ANTHONY RAY LOPEZ SR., MADELINE VELASQUEZ, and JOSEPHINE GUADALUPE DOMINGUEZ on November 8, 2022 in the City of Ontario, County of San Bernardino. On November 8, 2022 in the morning hours, decedents ANTHONY RAY LOPEZ SR., MADELINE VELASQUEZ, and JOSEPHINE GUADALUPE DOMINGUEZ were in a storm drain/flood channel in the City of Ontario in the midst of a torrential storm. November 8, 2022 was the second day of unprecedented heavy rains in Southern California.

Against this backdrop, unfortunately, in California and across the nation, there is a homelessness crisis where people resort to living on the streets and places like a storm drain/flood channel. ANTHONY RAY LOPEZ SR. and MADELINE VELASQUEZ were houseless and lived in a storm drain in the City of Ontario. On the day in question, JOSEPHINE GUADALUPE DOMINGUEZ was visiting the storm drain/flood channel to provide assistance to houseless individuals.

1

Like many public entities, Appellees-Defendants CITY OF ONTARIO and COUNTY OF SAN BERNARDINO recognized the homelessness crisis and launched initiatives to address this crisis. For example, during an April 26, 2022 County of San Bernardino Board of Supervisors meeting which was six (6) months prior to the deaths in question, Fifth District Supervisor Joe Baca, Jr. made public comments concerning the clean-up of flood channels which included participation by COUNTY Code Enforcement and Public Works. **ER-30**.

Further in the backdrop is the fact that Defendants-Appellees CITY of ONTARIO own and maintain approximately 137 miles of existing storm drain conduits, culverts and channels of various sizes and materials which included the storm drain where Decedents died. **ER-23**. Defendant-Appellee COUNTY, through the San Bernardino County Flood Control District (SBCFCD), manages the regional flood protection functions for San Bernardino County with authority granted via State legislation enacted in 1939. **ER-23-24**.

Defendant-Appellee BRENDON BIGGS, at all relevant times, was the Chief Flood Control Engineer and highest ranking employee within the Flood Control Division. **ER-27**. Defendant-Appellee BRENDON BIGGS was involved in the overseeing the flood channels on November 8, 2022 and had the ultimate decision making authority relative to opening and/or controlling flood gates on November 8, 2022. **ER-27**.

As a foreseeable result, the perfect storm occurred on November 8, 2022 when Defendants-Appellees BRENDON BIGGS and Does 1-10 made, authorized, or participated in the decision to open the flood gates where ANTHONY RAY LOPEZ SR., MADELINE VELASQUEZ, and JOSEPHINE GUADALUPE DOMINGUEZ were physically located knowing that Decedents were present in such location. Defendants-Appellees were aware of the risks of their decision, that is harming those in the storm drain/flood channel, yet they proceeded in their course of action knowing that their decision would seriously harm or kill individuals in the storm drain/flood channel. As a result, ten (10) people in the storm drain/flood channel were swept away by water which travelled to the storm drain/flood channel based

3

upon the conduct of Defendants-Appellees BRENDON BIGGS and Does 1-10. ANTHONY RAY LOPEZ SR., MADELINE VELASQUEZ, and JOSEPHINE GUADALUPE DOMINGUEZ were part of ten (10) people swept away by the violent waters and they died as a result.

As a consequence, the families of ANTHONY RAY LOPEZ SR., MADELINE VELASQUEZ, and JOSEPHINE GUADALUPE DOMINGUEZ filed suit alleging various civil rights violations against CITY, COUNTY and BIGGS. However, the District Court dismissed Plaintiffs-Appellants complaint at the pleading stage.

In dismissing Plaintiffs-Appellants complaint at the pleading stage in granting Defendants-Appellees' motions to dismiss, the District Court erred in three (3) general manners. First, the District Court erred in ruling that Government Code Sections 840 and 815.2 applied to the state law claims despite Plaintiffs-Appellants not asserting any dangerous conditions claims and despite the cause of harm being the intentional decisions of municipal entity employees.

///

4

Next the District Court erred in dismissing Plaintiffs-Appellants' Municipal Liability (*Monell*) claims despite pleading sufficient facts during the pleading stage. Finally, the District Court erred in dismissing Plaintiffs-Appellants' State Created Danger Doctrine and Interference with Familial Relationship claims despite pleading sufficient facts during the pleading stage.

Accordingly, as further discussed below, the District Court should be reversed.

## STANDARD OF REVIEW

This Court reviews "de novo a district court's grant of a motion to dismiss under Rule 12(b)(6), 'accepting all factual allegations in the complaint as true and construing them in the light most favorable to the nonmoving party.'" *Coronavirus Rep. v. Apple, Inc.*, 85 F.4th 948, 954 (9th Cir. 2023) (quoting *Ebner v. Fresh, Inc.*, 838 F.3d 958, 962 (9th Cir. 2016)).

This Court also reviews for abuse of discretion a district court's decision to dismiss a complaint with prejudice. *Benavidez v. County of San Diego*, 993 F.3d 1134, 1141 (9th Cir. 2021). However, this Court reviews "the

question of futility of amendment de novo." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1172 (9th Cir. 2016).

## STATEMENT OF THE CASE

### I.  STATEMENT OF FACTS

#### A. Background on Storm Drains/Flood Channels in the City of Ontario and County of San Bernardino

Defendant-Appellee -Appellees CITY and COUNTY own and maintain approximately 137 miles of existing storm drain conduits, culverts and channels of various sizes and materials. **ER-23**. Defendant-Appellee COUNTY, through the San Bernardino County Flood Control District (SBCFCD), manages the regional flood protection functions for San Bernardino County with authority granted via State legislation enacted in 1939. **ER-23-24**.

In addition to the city-owned storm drains there are the local state-owned storm drains along Caltrans' I-10 and SR-60 corridors. **ER-24**. All the city-owned facilities drain to a number of regional backbone facilities owned and operated by San Bernardino County Flood Control District. **ER-24**. CITY

6

and COUNTY have developed a very extensive system of facilities, including dams, conservation basins, channels, and storm drains. **ER-24**. The purpose of these facilities is to intercept and convey flood flows through and away from the major developed areas of the CITY and COUNTY. **ER-24**.

### B. The Storm Drain/Flood Channel in Question

On November 8, 2022 in the morning hours, decedents ANTHONY RAY LOPEZ SR., MADELINE VELASQUEZ, and JOSEPHINE GUADALUPE DOMINGUEZ were in a flood control basin/storm drain on the 200 block of East 4th Street in the City of Ontario ("SUBJECT STORM DRAIN"). **ER-24**.

The SUBJECT STORM DRAIN lies in the western portion of the Santa Ana River's watershed, upstream of the Prado Flood Control Basin. **ER-24**. It is in a 277 square-mile area referred to as Zone 1 by San Bernardino County Flood Control District. Zone 1 generally slopes towards the south, encompassing the alluvial fan from the San Gabriel Mountains to Santa Ana River. **ER-24**. Four (4) major regional channel systems traverse Zone 1 in a

north-south direction; they include San Antonio Channel, Cucamonga Channel, Day Creek Channel and San Severine Channel. **ER-24**.

### C. On November 8, 2022, Decedents were in the SUBJECT STORM DRAIN and Appellees-Defendants' Conduct Cause Decedents to be Swept Away and Killed by Waters

On November 8, 2022, Southern California, including San Bernardino County, was experiencing a record breaking storm. **ER-24**. The storm brought torrential rains which struck San Bernardino County. **ER-24**. The rain fall from the storm was record breaking and caused flooding throughout San Bernardino County. **ER-24**.

On November 8, 2022 in the morning hours, decedents ANTHONY RAY LOPEZ SR., MADELINE VELASQUEZ, and JOSEPHINE GUADALUPE DOMINGUEZ were in a flood control basin/storm drain, the SUBJECT STORM DRAIN, on the 200 block of East 4th Street in the City of Ontario. **ER-24**. ANTHONY RAY LOPEZ SR., and MADELINE VELASQUEZ lived in the SUBJECT STORM DRAIN. JOSEPHINE

GUADALUPE DOMINGUEZ was visiting the SUBJECT STORM DRAIN to help individuals experiencing homelessness. **ER-24**.

Before and on November 8, 2022, Defendants COUNTY were well aware that individuals, such as ANTHONY RAY LOPEZ SR., MADELINE VELASQUEZ, and JOSEPHINE GUADALUPE DOMINGUEZ, were living and frequenting the SUBJECT STORM DRAIN. **ER-24-25**.

Despite having knowledge that individuals were living and present at the SUBJECT STORM DRAIN and having knowledge that the storm overwhelmed the storm drain system with water, Defendant-Appellee BRENDON BIGGS and DOES 1-10, inclusive, took affirmative actions to permit heavy rains to enter Zone 1 and/or West Cucamonga Channel. **ER-25**. The affirmative actions taken by Defendant-Appellee BRENDON BIGGS and DOES 1-10, inclusive were to open flood gates or permit water to travel to the SUBJECT STORM DRAIN where ANTHONY RAY LOPEZ SR., MADELINE VELASQUEZ, and JOSEPHINE GUADALUPE DOMINGUEZ were present. **ER-25**.

///

9

The maps below detail the flood control system which corresponds to the SUBJECT STORM DRAIN. **ER-25**.



The red arrow in the map below shows where the SUBJECT STORM

DRAIN was located relative to the flood control system in West Cucamonga.

**ER-26**.



The flood system permitted all Defendants-Appellees to monitor and

control the flow of water through the flood control system. **ER-26**.

Defendants-Appellees were aware that ANTHONY RAY LOPEZ SR.,

MADELINE VELASQUEZ, and JOSEPHINE GUADALUPE DOMINGUEZ

were present at the SUBJECT STORM DRAIN yet still took the affirmative

11

act of opening flood gates and permitting dangerous amounts of water to enter the West Cucamonga Channel and ultimately, the SUBJECT STORM DRAIN. **ER-26**.

Once Defendants-Appellees permitted dangerous amounts of water to enter West Cucamonga Channel and the SUBJECT STORM DRAIN, ten (10) people were swept away by the overwhelming water. **ER-26**. ANTHONY RAY LOPEZ SR., MADELINE VELASQUEZ, and JOSEPHINE GUADALUPE DOMINGUEZ were part of the ten (10) people who were swept away. **ER-26**.

As a result of Defendant-Appellee s actions in controlling the flood system, ANTHONY RAY LOPEZ SR., MADELINE VELASQUEZ, and JOSEPHINE GUADALUPE DOMINGUEZ were swept away by dangerous amounts of water while in the SUBJECT STORM DRAIN and ultimately, drowned to death. **ER-26**.

///

///

///

### D. Defendant-Appellee BRENDON BIGGS, as the Chief Flood Control Engineer, Acted with Deliberated Indifference when the Operated and Controlled the Flood Channels During the Incident

As the Chief Flood Control Engineer and highest ranking employee with the Flood Control Division, Defendant-Appellee BRENDON BIGGS had the ultimate decision making authority relative to opening and/or controlling flood gates on November 8, 2022. **ER-27**. Indeed, given that record breaking rains were occurring on November 8, 2022, Defendant-Appellee BRENDON BIGGS and DOES 1-10 was closely monitoring the flood channels to ensure proper control. **ER-28**. At some point during the heavy rains before the subject incident, Defendant-Appellee BRENDON BIGGS and DOES 1-10 made a decision concerning the flood channels and or flood controls which created the danger of serious bodily injury to LOPEZ SR., VELASQUEZ, and DOMINGUEZ. **ER-28**.

///

///

13

But for the conduct of Defendant-Appellee BRENDON BIGGS and DOES 1-10, inclusive, LOPEZ SR., VELASQUEZ, and DOMINGUEZ would not have been subjected to the danger of death or serious bodily injury. **ER-28**.

Indeed, without the affirmative conduct of Defendant-Appellee BRENDON BIGGS and DOES 1-10, inclusive, LOPEZ SR., VELASQUEZ, and DOMINGUEZ would not have been swept away by the heavy rains and would not have died. **ER-28**.

Clearly, if Defendant-Appellee BRENDON BIGGS and DOES 1-10, inclusive, would not have opened the flood gates or operated the flood system which corresponds to the SUBJECT STORM DRAIN in Zone 1 and/or West Cucamonga Channel, LOPEZ SR., VELASQUEZ, and DOMINGUEZ would not have died. **ER-28**.

Given that Defendant-Appellee BRENDON BIGGS and DOES 1-10, inclusive, and the general community knew that individuals experiencing homelessness lived in the SUBJECT STORM DRAIN in Zone 1 and/or West Cucamonga Channel, it was foreseeable that opening the flood gates would

14

expose LOPEZ SR., VELASQUEZ, and DOMINGUEZ, to the danger of death or serious bodily injury because heavy rains would violently sweep away anyone who was in the SUBJECT STORM DRAIN. **ER-28**.

Furthermore, Defendant-Appellee BRENDON BIGGS and DOES 1-10, inclusive, were deliberately indifferent to the danger LOPEZ SR., VELASQUEZ, and DOMINGUEZ faced. **ER-28**. In fact, Defendant-Appellee BRENDON BIGGS and DOES 1-10, inclusive, knew that people including LOPEZ SR., VELASQUEZ, and DOMINGUEZ, were in the SUBJECT STORM DRAIN yet proceeded to operate the flood control system in such a way which caused the death of LOPEZ SR., VELASQUEZ, and DOMINGUEZ. **ER-28-29**.

Furthermore, Defendant-Appellee BRENDON BIGGS and DOES 1-10 were charged with overseeing all flood channels including SUBJECT STORM DRAIN by virtue of their supervisorial positions with the San Bernardino County Flood Control District. Therefore, Defendant-Appellee BRENDON BIGGS and DOES 1-10 were acutely aware of the many people living in the SUBJECT STORM DRAIN well before the incident of November

8, 2022. **ER-29**. Instead, of taking measures to not place the lives of LOPEZ SR., VELASQUEZ, and DOMINGUEZ at risk in advance of the major storms, Defendant-Appellee BRENDON BIGGS acted with deliberated indifference to their lives, thereby causing their deaths. **ER-29**.

Notably, the severe rain storm in November of 2022 which resulted in the at-issue deaths began on November 7, 2022, meaning November 8, 2022 was the *second* day of the severe storms. **ER-29**. As the chief, Defendant-Appellee BRENDON BIGGS was contemporaneously monitoring the storm and its growing severity from November 7 to November, and was further receiving ongoing updates concerning the severe rain storm and its dangerous progression. **ER-29**. By virtue of his training and experience, Defendant-Appellee BRENDON BIGGS was intimately familiar and thus keenly recognized how these severe storms directly caused overflooding in the waterways—waterways such as the SUBJECT STORM DRAIN. **ER-29**. Therefore, by November 8, 2022, the *second* day of the sever rains, Defendant-Appellee BRENDON BIGGS was fully aware and fully

16

appreciated the grave risks which LOPEZ SR., VELASQUEZ, and DOMINGUEZ were faced with. **ER-29**.

In fact, several months before November 8, 2022, Defendant-Appellee COUNTY conducted "clean ups" of areas like the SUBJECT STORM DRAIN yet failed to evacuate or remove LOPEZ SR., VELASQUEZ, and DOMINGUEZ once it became clear that they would be in danger during the heavy rains. **ER-29**. As the chief, Defendant-Appellee BRENDON BIGGS was intimately familiar and appreciated the various reasons why the COUTY, local municipality, engaged in the "clean ups." **ER-30**. The reasons for the "clean ups" were to specifically address the many people living in the SUBJECT STORM vicinity to not only account for the lives that could potentially be lost during severe storms, but to put measures in place to prevent the very thing from happening. **ER-30**. Given that Defendant-Appellee BRENDON BIGGS and his employer, COUNTY, were taking measures to address these very risks which they were acutely aware would be in harm's way because of their living quarters in the danger zone of the

17

SUBJECT STORM, such is an acknowledgment that a risk to human life existed. **ER-30**.

In fact, during an April 26, 2022 County of San Bernardino Board of Supervisors meeting which was six months prior to the deaths in question, Fifth District Supervisor Joe Baca, Jr. made public comments concerning the clean-up of flood channels which included participation by COUNTY Code Enforcement and Public Works. **ER-30**. The Food Control District is a division within Public Works. Based upon Fifth District Supervisor Joe Baca, Jr's own comments concerning the flood channels and the need to clean them up, it is evident that COUNTY agents, including Defendant-Appellee BRENDON BIGGS, had express knowledge about people living in the SUBJECT STORM DRAIN, and thus had an appreciation of the grave risk that would be posed to these lives should there be a severe storm in the impending future. **ER-30**. And indeed, a severe storm came. **ER-30**.

Defendant-Appellee BRENDON BIGGS was deliberately indifferent because when he made, authorized, or participated in the decision to open the flood gates on LOPEZ SR., VELASQUEZ, and DOMINGUEZ,

18

Defendant-Appellee BRENDON BIGGS disregarded a known or obvious consequence of his action. **ER-30**. The known or obvious consequence was that the people living or located in the SUBJECT STORM DRAIN, including LOPEZ SR., VELASQUEZ, and DOMINGUEZ, would be swept away and killed or seriously injured by dangerous waters. **ER-30**. Defendant-Appellee BRENDON BIGGS had a culpable mental state because given his express knowledge of innocent lives in the SUBJECT STORM DRAIN, Defendant-Appellee BRENDON BIGGS, as the chief, made, authorized, or participated in the decision to open the flood gates which he knew known, would lead directly to the death of serious bodily injury of LOPEZ SR., VELASQUEZ, and DOMINGUEZ. **ER-30-31**.

Any reasonable person, including Defendant-Appellee BRENDON BIGGS, recognized that that LOPEZ SR., VELASQUEZ, and DOMINGUEZ would have been placed in harm and intended to expose LOPEZ SR., VELASQUEZ, and DOMINGUEZ to such risks given his knowledge of the circumstances which included it being the second day of severe rains and

19

months, if not years, of people living in the SUBJECT STORM DRAIN. **ER-31**.

Therefore, opening the flood gates in the SUBJECT STORM DRAIN has no other reasonable conclusion except that Defendant-Appellee BRENDON BIGGS knew LOPEZ SR., VELASQUEZ, and DOMINGUEZ would face death or serious bodily injury when he made, authorized, or participated in the decision to open the flood gates given that he knew they were there, yet ignored such risk and exposed LOPEZ SR., VELASQUEZ, and DOMINGUEZ to death or serious bodily injury. **ER-31**.

As a direct and proximate result of Defendant-Appellees' conduct, the civil rights of LOPEZ SR., VELASQUEZ, and DOMINGUEZ, as protected by the Fourteenth Amendment of the United States Constitution were violated and they lost their lives as a result. **ER-31**.

## II. PERTINENT PROCEDURAL HISTORY

On November 8, 2023, Plaintiffs-Appellants filed their operative complaint against Appellees-Defendants County of San Bernardino, City of Ontario and the State of California. **ER-140.** The causes of action were for

State Created Danger, Interference with Parent/Child relationships, Municipal Liability (*Monell*), Negligence and Bane Act Violations. **ER-140.**

On November 9, 2023, in order to correct some typographical errors, Plaintiffs-Appellants filed a First Amended Complaint, no substantive revisions were made. **ER-116**.

On December 18, 2023, Defendant-Appellee County of San Bernardino filed its Motion to Dismiss Plaintiffs-Appellants First Amended Complaint. **ER-189; Dkt. 17.**

On January 11, 2024, Defendant-Appellee City of Ontario filed its Motion to Dismiss Plaintiffs-Appellants First Amended Complaint. **ER-189; Dkt. 25.**

On February 9, 2024, Defendant-Appellee State of California filed its Motion to Dismiss Plaintiffs-Appellants First Amended Complaint. **ER-190; Dkt. 31.**

On March 13, 2024, the District Court granted Appellees-Defendants' Motion to Dismiss Plaintiffs-Appellants First Amended Complaint in part and granted leave to amend. **ER-110-115.** In the March 13, 2024 Order, the

District Court fully dismissed the State of California without leave to amend. **ER-114**. In the March 13, 2024 Order, the District Court also fully dismissed Plaintiffs-Appellants state law claims without leave to amend. **ER-114-115**.

On March 29, 2024, Plaintiffs-Appellants filed their Second Amended Complaint. **ER-67**.

On April 12, 2024, Defendant-Appellee City of Ontario filed its Motion to Dismiss Plaintiffs-Appellants Second Amended Complaint. **ER-191; Dkt. 42.**

On April 16, 2024, Defendant-Appellee County of San Bernardino filed its Motion to Dismiss Plaintiffs-Appellants Second Amended Complaint. **ER-191; Dkt. 43.**

On May 21, 2025, the District Court granted Appellees-Defendants' Motion to Dismiss Plaintiffs-Appellants Second Amended Complaint in part and granted leave to amend. **ER-62-66.** In the May 21, 2024 Order, the District Court fully dismissed Plaintiffs-Appellants Municipal Liability (*Monell*) claim, the third cause of action, without leave to amend. **ER-65**. Given that the Municipal Liability cause of action was the last cause of action

against Defendant-Appellee City of Ontario, City of Ontario was effectively dismissed from the case.

On June 7, 2024, Plaintiffs-Appellants filed their Third Amended Complaint. **ER-19**. The sole remaining claims were the first and second causes of action for State Created Danger and Interference with Parent/Child relationships, respectively. *Id.*

On June 20, 2024, Defendant-Appellee County of San Bernardino filed its Motion to dismiss Plaintiffs-Appellants Third Amended Complaint. **ER-192; Dkt. 52.**

On July 19, 2024, the District Court held a hearing on Defendant-Appellee County of San Bernardino filed a Motion to dismiss Plaintiffs-Appellants Third Amended Complaint. **ER-5-18**.

On July 19, 2024, the District Court dismissed Plaintiffs-Appellants Third Amended Complaint as to Defendant Brendon Briggs with prejudice. **ER-4**.

On September 16, 2024, the District Court closed the case. **ER-3**.

23

On August 20, 2024, Plaintiffs-Appellants filed their notice of appeal.

**ER-164**.

### SUMMARY OF THE ARGUMENT

1.    The District Court erred in ruling that Government Code Sections 840 and 815.2 applies despite Plaintiffs-Appellants not asserting any dangerous conditions claims and despite the cause of harm being the intentional decisions of municipal entity employees.

2.    The District Court erred in dismissing Plaintiffs-Appellants' Municipal Liability (*Monell*) claims despite pleading sufficient facts during the pleading stage.

3.    The District Court erred in dismissing Plaintiffs-Appellants' State Created Danger Doctrine and Interference with Familial Relationship claims despite pleading sufficient facts during the pleading stage.

///

///

///

///

## ARGUMENT

## I. THE DISTRICT COURT ERRED BY DISMISSING PLAINTIFFS-APPELLANTS STATE LAW CLAIMS IN FINDING THAT GOVERNMENT CODE SECTIONS 840 AND 815.2 APPLIED

Plaintiffs-Appellants state law claims for negligence and Bane Act violations were dismissed by the District Court in the ruling on the motion to dismiss the First Amended Complaint by finding that the immunities in Government Code Sections 840 and 815.2 applied. **ER-113-114**. The District Court dismissed such claims without leave to amend. **ER-114**.

The District Court first ruled that Government Code Section 840 applied because "Plaintiffs' injuries arose from a 'condition of public property' (the flooding of the storm drain) resulting from conduct (opening the flood gates) undertaken by municipal employees within the scope of their employment." **ER-113-114**. Thereafter, the District Court ruled that "[p]er Section 815.2(b), these employees' immunity precludes Plaintiffs' derivative claims against the municipal Defendants." **ER-114**.

25

The District Court erred for three (3) reasons. Foremost, the District Court misapplied Section 840 because 840 only applies to artificial conditions, not natural conditions such as water like in this matter. Second, the District Court erred because based upon the statutory interpretation of Section 840, Section 840 does not apply here. Finally, the District Court abused its discretion because it did not grant Plaintiffs-Appellants leave to amend in order to allege the exception of Section 840, Section 840.2, applied, which it does.

### A. The District Court Erred By Dismissing Plaintiffs-Appellants State Law Claims In Finding That Government Code Sections 840 Applied

The District Court erred because Plaintiffs-Appellants state law claims were not predicated on an "artificial condition," rather Plaintiffs-Appellants state law claims were based upon individual municipal employees making the decision, whether negligently or with deliberate indifference, to open and control flood gates which caused decedents to be swept by violent waters and ultimately, caused decedent's death. There was no artificial

26

condition involved because water is not an artificial part of public property. Worst yet, Plaintiffs-Appellants never alleged a dangerous condition on public property claim, merely negligence and Bane Act claims.

Indeed, Plaintiffs-Appellants alleged negligence and a Bane Act violation based upon the decision of Appellees-Defendants COUNTY, CITY, BIGGS and other employees to open flood gates and permitting water to sweep away and kill Decedents. Plaintiffs-Appellants did not allege a dangerous condition because there is no dangerous condition which existed at the time of the incident and a dangerous condition did not cause the deaths of Decedents. Water does not constitute a dangerous condition under Gov. Code Section 835 and the Tort Claims Act.

Indeed, the Tort Claims Act defines a '"[d]angerous condition"' as 'a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used.' Public property is in a dangerous condition within the meaning of section 835 if it 'is physically damaged, deteriorated,

or defective in such a way as to foreseeably endanger those using the property itself.' " *Cordova v. City of L.A.* (2015) 61Cal.4th 1099, 1105.

Here, water travelling through water ways is not a "condition of property." A dangerous condition is a condition of property which causes risk of harm. However, water travelling through the water ways is not an condition of the flood channels and it is not public property at all, it is merely a natural condition.

Further, Plaintiffs-Appellants did not allege that any property controlled by CITY and COUNTY was physically damaged, deteriorated, or defective in any way. The flood gates were not damaged, the flood gates were not deteriorated, and the flood gates were not defective. The flood gates channels operated as they should have but the manner in which they were operated is what is the crux of Plaintiffs-Appellants' claims. Plaintiffs-Appellants' allegations stem from the willful decision of a COUNTY, CITY, BIGGs and other employee which was negligent and in violation of the Bane Act. In fact, the allegations are that CITY's and COUNTY's employees breached the following duties:

To properly operate the flood control system;

 a. To properly maintain basins, storm drains and other water reservoirs;

 b. To prevent members of the public from entering water channels or other areas in direct path of water;

 c. To refrain from opening flood gates when people are in the way of dangerous waters;

 d. To refrain from unreasonably creating danger or increasing decedents' risk of harm;

 e. To refrain from abusing their authority granted them by law; and

 f. To refrain from violating Decedent's rights as guaranteed by the United States and California Constitutions, as set forth above, and as otherwise protected by law.

**ER-134.**

There are not many published decisions which interpret Section 840, but the published cases further illustrate how Section 840 does not apply in our case. First, *Van Kempen v. Hayward Area Park, Etc. Dist*, 23 Cal.App.3d 822

(1972) is one published case which interpreted Section 840 but our case is distinguishable from *Van Kempen v. Hayward Area Park, Etc. Dist*, 23 Cal.App.3d 822 (1972). Foremost, in *Van Kempen*, the Plaintiff was injured due to a work bench falling on the Plaintiffs. Here, no such injury occurred. The injury in our case stems from COUNTY and CITY employees opening flood gates and water rushing and sweeping away Decedents, not a condition on public property.

In *Van Kempen*, the court held that "it inescapably follows that the rules set forth above are applicable" where the facts of the case left no doubt that, without any attempt to phrase the theory of recovery differently, the accident complained of: (i) occurred on public property; (ii) was caused by an artificial condition; and (iii) that condition existed owing to the alleged omission of District's employees acting within the scope of their employment. *Id.* at 825.

Here, while the incident occurred on public property, there is no artificial condition which caused the incident. What caused the incident in our case was again, COUNTY, CITY, BIGGS and other employees opening

flood gates and a natural condition, water. Therefore, the holding in *Van Kempen* does not apply to our case.

Another published decision is *Longfellow v. Cnty. of San Luis Obispo*, 144 Cal. App. 3d 379, 382 (1983). In *Longfellow,* the Plaintiff "fell while walking on a sidewalk. *Id.* The court held that Section 840 applied and reasoned that "[t]his is specifically what the plaintiffs allege in this cause of action. That is, that a dangerous condition of public property existed which should have been repaired by an employee of the County working within the scope of his employment and that, therefore, the County may be vicariously liable for the employee's failure to act. However, since the employee is immune, the public entity cannot be held liable for the acts of the employee and plaintiffs have no such cause of action." *Id*. at 384.

Here, unlike *Longfellow,* Decedents did not trip and fall while walking on a sidewalk. Decedents died because municipal entity employees made the decision to permit a natural condition to sweep away Decedents and kill them. Plaintiffs-Appellants are not alleging that a condition on public

property should have been repaired, merely that an intentional decision was made which caused injuries.

Accordingly, Section 840 does not apply because Plaintiffs-Appellants never alleged dangerous condition claims given that the water which killed Decedents was not public property, merely the mechanism which killed Decedents based upon the Appellees-Defendants' intentional decisions. Finally, given that Section 840 does not apply, Section 815.2 also does not apply. Therefore, the District Court erred in applying Section 840.

## B. The District Court Further Erred because Based upon Statutory Interpretation, Section 840 does not Apply

The District Court further erred because when applying statutory interpretation, it is evidence that Section 840 does not apply in our case. Courts "must interpret the statute as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous." *United States v. Neal*, 776 F.3d 645, 652 (9th Cir.2015) (citation, alterations, and internal quotation marks omitted). "Additionally, particular

phrases must be construed in light of the overall purpose and structure of the whole statutory scheme." *Id.* (citation, alteration, and internal quotation marks omitted).

Here, pursuant to statutory interpretation, Section 840 does not apply because such provision pertains to pure dangerous condition claims. Plaintiffs-Appellants' state law claims are not dangerous conditions claims, they are claims based the decision by municipal entity employees to open flood gates and control and operates water ways in a manner which caused death. When reading Section 840 as a whole, it is clear that such section does not apply to a case such as ours.

Indeed, when reading another section within the Tort Claims Act, Section 835, Section 840 only applies to the actual condition of public property, not natural conditions such as water. The entire statutory scheme within the Tort Claims Act support the position that the condition in question is natural.

For example, Gov. Code Section 831.21 provides that public beaches are deemed natural conditions. Like public beaches, rain and water which

travels through flood channels is a natural condition, not an artificial condition. As another example, Gov. Code Section 831.2, provides that "[n]either a public entity nor a public employee is liable for an injury caused by a natural condition of any unimproved public property, including but not limited to any natural condition of any lake, stream, bay, river or beach." The Legislature envisioned injuries which stemmed from natural condition on public property. However, immunity under Section 831.2 only applies in unimproved public property. There is not immunity under the Tort Claims act for a natural condition on improved property.

Other sections within the Tort Claims Act are important to consider because Section 840 was not designed to apply in a situation like ours where a natural condition on improved public property causes injury and death. When reading the entire statutory scheme as a whole, Section 840 does not apply to our case. Therefore, statutory interpretation further demonstrates that the District Court erred in applying Section 840.

///

///

34

**C. The District Court Abused its Direction by not Granting Plaintiffs-Appellants Leave to Amend to Allege that Section 840.2 Applied**

Even if Plaintiffs-Appellants state law claims are considered dangerous conditions claims, liability can still be established and the District Court abused its discretion by dismissing such claims without leave to amend. Plaintiffs-Appellants could have alleged the exception delineated in Gov. Code § 840.2(a)-(b).

An employee of a public entity may be liable for an injury caused by a dangerous condition where a plaintiff can show that "[a]n employee of a public entity is liable for injury caused by a dangerous condition of public property if the plaintiff establishes that the property of the public entity was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:

[t]he dangerous condition was directly attributable wholly or in substantial part to a negligent or wrongful act of the employee and the employee had the authority and the funds and other means immediately available to take alternative action which would not have created the dangerous condition; or

[t]he employee had the authority and it was his responsibility to take adequate measures to protect against the dangerous condition at the expense of the public entity and the funds and other means for doing so were immediately available to him, and he had actual or constructive notice of the dangerous condition under Section 840.4 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.

Cal. Gov. Code § 840.2(a)-(b).

Here, the SUBJECT STORM DRAIN was in a dangerous condition at the time of the injury because there was a substantial risk of harm to decedents given the heavy rains. Decedent's death was proximately caused by the dangerous condition. Further, the dangerous condition created a

36

reasonably foreseeable risk of the kind of injury which was incurred because Appellees-Defendants were aware of people such as decedents who lived in the SUBJECT STORM DRAIN. Decedents also used the SUBJECT STORM DRAIN with due care because they were living and engaging in normal activities in the SUBJECT STORM DRAIN for a significant period of time.

Further, the dangerous condition was directly wholly attributable to a negligent and wrongful act of the employee and the employee had the authority and the funds and other means immediately available to take alternative action which would not have created the dangerous condition. The alternative action in this case would have been to not open the flood gates so that violent waters could harm and kill decedents. The alternative action in this case would have been to not operate and control the flood channels so that violent waters could harm and kill decedents. Therefore, the exception to Section 840 in Gov. Code Section 840.2 applies. The District Court abused its discretion in not permitting Plaintiffs-Appellants to allege such exception.

Accordingly, the District Court erred and it should be reversed.

## II. THE DISTRICT COURT ERRED BY DISMISSING PLAINTIFFS-APPELLANTS' MUNICIPAL LIABILITY (*MONELL*) CLAIMS

The District Court dismissed Plaintiffs-Appellants' Municipal Liability (*Monell*) claims in ruling on the Motion to Dismiss Plaintiffs-Appellants' Second Amended Complaint. The District Court's relevant ruling is as follows:

In dismissing Plaintiffs' previous complaint for failure to state a claim, this Court instructed that the *Monell* cause of action could survive only to the extent it was supported by some "useful articulation of the municipal policies or customs they believe caused Decedents' deaths, and facts suggesting that the events described in the complaint are part of a larger pattern of conduct attributable to the government Defendants and their agents." [Dkt. 40]. The additional allegations Plaintiffs include in their amended complaint [see Dkt. 41-1 at 55-59] remain conclusory and vague, while failing to offer a concrete description of any

underlying government policy or practice that could sustain a

claim of municipal *Monell* liability.

**ER-65**.

In the District Court's prior ruling in dismissing Plaintiffs-Appellants

First Amended Complaint, District Court's relevant ruling is as follows:

. . . These allegations fail to state a claim against either municipal

Defendant under *Monell*. . .

Here, Plaintiffs merely assert that the employee conduct that

caused Decedents' deaths was undertaken pursuant to

municipal policy. But in order to proceed on this claim, Plaintiffs

would need to – at a minimum – provide some useful

articulation of the municipal policies or customs they believe

caused Decedents' deaths, and facts suggesting that the events

described in the complaint are part of a larger pattern of conduct

attributable to the government Defendants and their agents.

The alternative theories of *Monell* liability to which the complaint

alludes fail for the same reasons discussed above. Plaintiffs

merely allege that "policymaking officers" of the City and County "directed, encouraged, allowed, and/or ratified" such conduct by their employees, or that they failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline subordinates engaging in the same. [FAC at ¶¶ 56-58]. Again, these allegations supply no detail to render Plaintiff's bare legal conclusions plausible.

**ER-112-113.**

The District Court erred for three (3) reasons. First, Plaintiffs-Appellants did in fact plead sufficient facts to articulate municipal policies, customs and practices. Second, Plaintiffs-Appellants did in fact plead sufficient facts to establish a pattern for *Monell* purposes. Third, the District Court failed to consider other theories of *Monell* including the failure to train theory.

///

///

///

## A. The District Court Erred by Finding that Plaintiffs-Appellants did not Plead a Policy, Custom or Practice

"A municipal 'policy' exists when 'a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.'" *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005) (citation omitted) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). Such a policy may be "explicitly adopted" or "tacitly authorized." *Gibson v. United States*, 781 F.2d 1334, 1337 (9th Cir. 1986) (citing *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 690-91)).

As alternatives to proving the existence of a policy or custom of a municipality, a plaintiff may show: (1) "a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity;" (2) "the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision;" or (3) "the official with final policymaking authority either delegated that authority to, or

ratified the decision of, a subordinate." *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir.2005).

Here, Plaintiffs-Appellants did in fact identify several customs and practices in the Second Amended Complaint. In the Second Amended Complaint, Plaintiffs-Appellants alleged as follows:

54. The unconstitutional actions and/or omissions of Defendant BRENDON BIGGS as well as other employees acting on behalf of the Defendants CITY and COUNTY, on information and belief, were pursuant to the following customs, policies, practices, and/or procedures of the Defendants CITY and COUNTY, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policymaking officers for the CITY and COUNTY:

a. To permit decedents and members of the public, including LOPEZ SR., VELASQUEZ, and DOMINGUEZ, to live and/or be physically present

in water channels own and/or operated by CITY and COUNTY;

b.   To permit CITY and COUNTY employees such as Defendant BRENDON BIGGS and DOES 1-10 to manage flood control systems in such a way to imperil including LOPEZ SR., VELASQUEZ, and DOMINGUEZ and members of the public;

c.   To permit CITY and COUNTY employees such as Defendant BRENDON BIGGS and DOES 1-10 to open flood gates when individuals such as including LOPEZ SR., VELASQUEZ, and DOMINGUEZ and members of the public are in channels which are in the direct path of dangerous water; and

d.   Fail to properly regulate water levels in basins, storm drains and other water reservoirs which lead to water management issues when heavy rains occur.

Here, Plaintiffs-Appellants alleged four (4) different customs and practices which were unconstitutional. Plaintiffs-Appellants alleged a longstanding practice or custom which constitutes the "standard operating procedure" of the local government entity. Therefore, Plaintiffs-Appellants did sufficiently allege a custom and practice.

### B. The District Court Erred by Finding that Plaintiffs-Appellants did not Plead Sufficient Facts to Establish a Pattern

Under a *Monell* claim, evidence is required for a reasonable jury to conclude that a public entity had "a longstanding practice or custom which constitutes the standard operating procedure of the local government entity," that was "so persistent and widespread that it constitutes a permanent and well settled [County] policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996); *accord Jarboe v. Cnty. of Orange*, No. SACV0500202JVSANX, 2010 WL 11678244, at *9 (C.D. Cal. July 29, 2010) (finding that two instances of excessive force was insufficient for *Monell* purposes); *see also Meehan v. County of Los Angeles*, 856 F.2d 102, 107 (9th Cir. 1988) (evidence of two incidents of unconstitutional searches conducted in a

harassing manner, conducted approximately three months apart, were insufficient to withstand summary judgment).

However, even if Plaintiffs were unable to point to other similar deaths, Plaintiffs would still be able to establish widespread and longstanding customs and practices based upon the repeated constitutional violations withing a single case. In *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005), the court found a triable issue of fact as to whether the City had an unconstitutional policy or custom of suppressing certain political speech based on the testimony of several individuals that their entry to a particular area was permitted by police only after they removed offending buttons and stickers, coupled with the testimony of the officer in charge that the City would not permit "demonstrations" in the area. *Id*. This evidence, the Ninth Circuit found, was sufficient to create a triable issue of fact as to the *Monell* claim based on "widespread practices or ... repeated constitutional violations." *Id*. This claim was supported not only by evidence of several instances of the same conduct, but also by evidence, in the form of the testimony of an officer in charge of the City's security for an event, that

the conduct was in conformity with a policy directly attributable to the City. *Id*.

More recently, in an unpublished decision, the Ninth Circuit reversed a District Court's grant of summary judgment in a jail death case in connection with whether a custom and practice was widespread and longstanding. *Nyarecha v. Cnty. of Los Angeles*, No. 23-55773, 2024 WL 4511616 (9th Cir. Oct. 17, 2024). The Court held that "the safety checks that occurred in the hours preceding Nyarecha's death represent a practice or custom capable of satisfying the standard for Monell liability" because the officers each completed deficient safety checks independently, and completed them in the exact same deficient manner, indicating that the behavior exhibited during the twenty-six checks is indeed the norm. *Id.* at *2. The Court further held that "[t]t is highly unlikely such consistency would have been seen if this were not the de facto policy."

Here, there were repeated constitutional violations which caused Decedents' death. Defendants-Appellees were aware of Decedent's presence in the SUBJECT STORM DRAIN. Indeed, at least six (6) months before,

Defendant-Appellee COUNTY organized clean ups in areas like the SUBJECT STORM DRAIN. Defendants-Appellees knew that Decedents were living in the SUBJECT STORM DRAIN. By the time Decedents died, it was the second day of torrential rains. Despite knowing that Decedents were in the storm drain, Defendants-Appellees violated Decedents' constitutional rights several times because they affirmatively placed Decedents in danger multiple times. Therefore, Plaintiffs-Appellants could still establish widespread and longstanding customs and practices based upon the repeated constitutional violations in this case.

Furthermore, the Ninth Circuit has held that a municipal policy "may be inferred from widespread practices or 'evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded.'" *Nadell v. Las Vegas Metropolitan Police Dept.*, 268 F.3d 924, 929 (9th Cir. 2001); *see also Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011).

Here, Defendant-Appellee BIGGS was not discharged or reprimanded for violating Decedents' constitutional rights. Defendant-Appellee BIGGS

47

was a COUNTY employee for decades. Given that Defendant BIGGS was not discharged or reprimanded, a policy may be inferred from such repeated constitutional violations.

## C. The District Court Erred by Failing to Consider Other Monell Theories, Particularly the Failure to Train Theory

The District Court also erred because it failed to consider other *Monell* theories, particularly the failure to train theory. As to a municipality, "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). "[A] local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

To allege a failure to train, a plaintiff must include sufficient facts to support a reasonable inference (1) of a constitutional violation; (2) of a municipal training policy that amounts to a deliberate indifference to

constitutional rights; and (3) that the constitutional injury would not have resulted if the municipality properly trained their employees. *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001)).

Here, Plaintiffs-Appellants alleged that Defendants-Appellees also failed to train their employees, including Defendant-Appellee BIGGS. The District Court ruled that "these allegations supply no detail to render Plaintiff's bare legal conclusions plausible." **ER-113**. However, at the pleading stage, all that is required is for Plaintiffs-Appellants to plead sufficient facts to plausibly establish a claim which Plaintiffs-Appellants did in fact do. *See* **ER-83-84**.

Furthermore, in terms of widespread and longstanding, the Ninth Circuit has stated that evidence regarding the failure to train a single officer is insufficient to establish liability against a municipality. *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007) ("[E]vidence of the failure to train a single officer is insufficient to establish a municipality's deliberate policy."). "A pattern of similar constitutional violations by untrained

employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quoting *Bd. of Cnty. Cmm'rs v. Brown*, 520 U.S. 397, 409 (1997)).

However, such a pattern is not always necessary: "it may happen that in light of the duties assigned to specific officers or employees[,] the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). For example, in light of the "moral certainty" that police officers will be armed and confronted by fleeing felons, the failure to train police officers on the "constitutional limits on the use of deadly force could reflect the city's deliberate indifference to [a] 'highly predictable consequence.'" *Connick*, 563 U.S. at 63–64; *Canton*, 489 U.S. at 390 n.10.

Here, in light of the duties of the Defendants-Appellees employees including to properly manage a dangerous instrument such as flood channels where individuals such as Decedents live, it is evident that there is

50

a clear need for more and different training given that the inadequacy of the training. The flood channels are extensive and it is more prevalent than ever that individuals experiencing homelessness live in such areas. There is a clear need for municipal entity employees to be properly trained to prevent constitutional violations. At the very least, there is a clear need for different training given the number of houseless individuals who live in water ways.

Accordingly, the District Court should be reversed.

## III.    THE DISTRICT COURT ERRED BY DISMISSING PLAINTIFFS-APPELLANTS INDIVIDUAL SECTION 1983 CLAIMS

The District Court dismissed Plaintiffs-Appellants State Created Danger Doctrine and Interference with Familial Relationship claims with prejudice without leave to amend. **ER-13-17**. The District Court's ruling, in part, during the July 19, 2024 hearing was as follows:

I am going to grant the motion. and for the same reasons I've already articulated on the record, and for the same reasons that I expressed in the prior order is that I don't believe that plaintiff has sufficiently alleged facts that would support a plausible

claim of deliberate indifference. and for those reasons I don't believe that giving plaintiff additional opportunity to allege additional facts would result in a different result. so, therefore I am going to dismiss -- grant the motion and dismiss without leave to amend. and that will be the final order of the court.

**ER-16**.

The crux of the District Court's ruling was that Plaintiffs-Appellants did not plead sufficient facts to establish deliberate indifference. Deliberate indifference is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997). In other words, the state actor must "recognize[ ][an] unreasonable risk and actually intend[ ] to expose the plaintiff to such risks without regard to the consequences to the plaintiff." *L.W. v. Grubbs ("Grubbs II")*, 92 F.3d 894, 899 (9th Cir. 1996) (internal quotation omitted).

As the Chief Flood Control Engineer and highest ranking employee with the Flood Control Division, Defendant-Appellee BRENDON BIGGS

had the ultimate decision making authority relative to opening and/or controlling flood gates on November 8, 2022. **ER-27**. Indeed, given that record breaking rains were occurring on November 8, 2022, Defendant BRENDON BIGGS and DOES 1-10 was closely monitoring the flood channels to ensure proper control. **ER-28**. At some point during the heavy rains before the subject incident, Defendant-Appellee BRENDON BIGGS and DOES 1-10 made a decision concerning the flood channels and or flood controls which created the danger of serious bodily injury to LOPEZ SR., VELASQUEZ, and DOMINGUEZ. **ER-28**.

But for the conduct of Defendant-Appellee BRENDON BIGGS and DOES 1-10, inclusive, LOPEZ SR., VELASQUEZ, and DOMINGUEZ would not have been subjected to the danger of death or serious bodily injury. **ER-28**.

Indeed, without the affirmative conduct of Defendant-Appellee BRENDON BIGGS and DOES 1-10, inclusive, LOPEZ SR., VELASQUEZ, and DOMINGUEZ would not have been swept away by the heavy rains and would not have died. **ER-28**.

Clearly, if Defendant-Appellee BRENDON BIGGS and DOES 1-10, inclusive, would not have opened the flood gates or operated the flood system which corresponds to the SUBJECT STORM DRAIN in Zone 1 and/or West Cucamonga Channel, LOPEZ SR., VELASQUEZ, and DOMINGUEZ would not have died. **ER-28**.

Given that Defendant-Appellee BRENDON BIGGS and DOES 1-10, inclusive, and the general community knew that individuals experiencing homelessness lived in the SUBJECT STORM DRAIN in Zone 1 and/or West Cucamonga Channel, it was foreseeable that opening the flood gates would expose LOPEZ SR., VELASQUEZ, and DOMINGUEZ, to the danger of death or serious bodily injury because heavy rains would violently sweep away anyone who was in the SUBJECT STORM DRAIN. **ER-28**.

Furthermore, Defendant-Appellee BRENDON BIGGS and DOES 1-10, inclusive, were deliberately indifferent to the danger LOPEZ SR., VELASQUEZ, and DOMINGUEZ faced. **ER-28**. In fact, Defendant-Appellee BRENDON BIGGS and DOES 1-10, inclusive, knew that people including LOPEZ SR., VELASQUEZ, and DOMINGUEZ, were in the SUBJECT

STORM DRAIN yet proceeded to operate the flood control system in such a way which caused the death of LOPEZ SR., VELASQUEZ, and DOMINGUEZ. **ER-28-29**.

Furthermore, Defendant-Appellee BRENDON BIGGS and DOES 1-10 were charged with overseeing all flood channels including SUBJECT STORM DRAIN by virtue of their supervisorial positions with the San Bernardino County Flood Control District. Therefore, Defendant-Appellee BRENDON BIGGS and DOES 1-10 were acutely aware of the many people living in the SUBJECT STORM DRAIN well before the incident of November 8, 2022. **ER-29**. Instead, of taking measures to not place the lives of LOPEZ SR., VELASQUEZ, and DOMINGUEZ at risk in advance of the major storms, Defendant-Appellee BRENDON BIGGS acted with deliberated indifference to their lives, thereby causing their deaths. **ER-29**.

Notably, the severe rain storm in November of 2022 which resulted in the at-issue deaths began on November 7, 2022, meaning November 8, 2022 was the *second* day of the severe storms. **ER-29**. As the chief, Defendant-Appellee BRENDON BIGGS was contemporaneously monitoring the storm

and its growing severity from November 7 to November, and was further receiving ongoing updates concerning the severe rain storm and its dangerous progression. **ER-29**. By virtue of his training and experience, Defendant-Appellee BRENDON BIGGS was intimately familiar and thus keenly recognized how these severe storms directly caused overflooding in the waterways—waterways such as the SUBJECT STORM DRAIN. **ER-29**. Therefore, by November 8, 2022, the *second* day of the sever rains, Defendant-Appellee BRENDON BIGGS was fully aware and fully appreciated the grave risks which LOPEZ SR., VELASQUEZ, and DOMINGUEZ were faced with. **ER-29**.

In fact, several months before November 8, 2022, Defendant-Appellee COUNTY conducted "clean ups" of areas like the SUBJECT STORM DRAIN yet failed to evacuate or remove LOPEZ SR., VELASQUEZ, and DOMINGUEZ once it became clear that they would be in danger during the heavy rains. **ER-29**. As the chief, Defendant-Appellee BRENDON BIGGS was intimately familiar and appreciated the various reasons why the COUTY, local municipality, engaged in the "clean ups." **ER-30**. The reasons

56

for the "clean ups" were to specifically address the many people living in the SUBJECT STORM vicinity to not only account for the lives that could potentially be lost during severe storms, but to put measures in place to prevent the very thing from happening. **ER-30**. Given that Defendant-Appellee BRENDON BIGGS and his employer, COUNTY, were taking measures to address these very risks which they were acutely aware would be in harm's way because of their living quarters in the danger zone of the SUBJECT STORM, such is an acknowledgment that a risk to human life existed. **ER-30**.

Indeed, during an April 26, 2022 County of San Bernardino Board of Supervisors meeting which was six months prior to the deaths in question, Fifth District Supervisor Joe Baca, Jr. made public comments concerning the clean-up of flood channels which included participation by COUNTY Code Enforcement and Public Works. **ER-30**. The Food Control District is a division within Public Works. Based upon Fifth District Supervisor Joe Baca, Jr's own comments concerning the flood channels and the need to clean them up, it is evident that COUNTY agents, including Defendant-Appellee

BRENDON BIGGS, had express knowledge about people living in the SUBJECT STORM DRAIN, and thus had an appreciation of the grave risk that would be posed to these lives should there be a severe storm in the impending future. **ER-30**. And indeed, a severe storm came. **ER-30**.

Defendant-Appellee BRENDON BIGGS was deliberately indifferent because when he made, authorized, or participated in the decision to open the flood gates on LOPEZ SR., VELASQUEZ, and DOMINGUEZ, Defendant-Appellee BRENDON BIGGS disregarded a known or obvious consequence of his action. **ER-30**. The known or obvious consequence was that the people living or located in the SUBJECT STORM DRAIN, including LOPEZ SR., VELASQUEZ, and DOMINGUEZ, would be swept away and killed or seriously injured by dangerous waters. **ER-30**. Defendant-Appellee BRENDON BIGGS had a culpable mental state because given his express knowledge of innocent lives in the SUBJECT STORM DRAIN, Defendant-Appellee BRENDON BIGGS, as the chief, made, authorized, or participated in the decision to open the flood gates which he knew known, would lead

directly to the death of serious bodily injury of LOPEZ SR., VELASQUEZ, and DOMINGUEZ. **ER-30-31**.

Any reasonable person, including Defendant-Appellee BRENDON BIGGS, recognized that that LOPEZ SR., VELASQUEZ, and DOMINGUEZ would have been placed in harm and intended to expose LOPEZ SR., VELASQUEZ, and DOMINGUEZ to such risks given his knowledge of the circumstances which included it being the second day of severe rains and months, if not years, of people living in the SUBJECT STORM DRAIN. **ER-31**.

Therefore, opening the flood gates in the SUBJECT STORM DRAIN has no other reasonable conclusion except that, Defendant-Appellee BRENDON BIGGS knew LOPEZ SR., VELASQUEZ, and DOMINGUEZ would face death or serious bodily injury when he made, authorized, or participated in the decision to open the flood gates given that he knew they were there, yet ignored such risk and exposed LOPEZ SR., VELASQUEZ, and DOMINGUEZ to death or serious bodily injury. **ER-31**.

As a direct and proximate result of Defendants' conduct, the civil rights of LOPEZ SR., VELASQUEZ, and DOMINGUEZ, as protected by the Fourteenth Amendment of the United States Constitution were violated and they lost their lives as a result. **ER-31**.

Based upon the foregoing facts which were alleged in the Third Amended Complaint, Plaintiffs-Appellants pled sufficient facts to establish deliberate indifference. Defendant-Appellee BRENDON BIGGS was aware of the risks based upon the totality of the circumstances and his duties and obligations as the chief. The risk were that Defendant-Appellee BRENDON BIGGS knew that individuals such as Decedents who were known to live in the storm drains/flood channels, and specifically the SUBJECT STORM DRAIN, and continued in his course of action of making, authorizing, and participating in the decision of opening the flood gates. Defendant-Appellee BRENDON BIGGS decided to open the flood gates where ANTHONY RAY LOPEZ SR., MADELINE VELASQUEZ, and JOSEPHINE GUADALUPE DOMINGUEZ were physically located knowing that Decedents were present in such location.

Therefore, with resolving all reasonable inferences in non-moving parties' favor, Plaintiffs-Appellants did plead sufficient facts to establish deliberate indifference.

## CONCLUSION

Based on the foregoing, Plaintiffs-Appellants request that this Court reverse the District Court.

Dated: January 2, 2025

**LAW OFFICES OF CHRISTIAN CONTRERAS**
**A PROFESSIONAL LAW CORPORATION**

By: _____
CHRISTIAN CONTRERAS
Attorneys for Plaintiffs-Appellants
Estate of Anthony Ray Lopez, et al.

## FED. R. APP. 32(A)(7)(C) AND CIRCUIT RULE 32-1 CERTIFICATE OF COMPLIANCE

I certify that, this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because this brief contains 9,385 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a Proportionally spaced typeface – Palatino Linotype – 14-point font – using Microsoft Word.

Dated: January 2, 2025

**LAW OFFICES OF CHRISTIAN CONTRERAS**
**A PROFESSIONAL LAW CORPORATION**

By: _____
CHRISTIAN CONTRERAS
Attorneys for Plaintiffs-Appellants
Estate of Anthony Ray Lopez, et al.

## STATEMENT OF RELATED CASES

Under Circuit Rule 28-2.6, Plaintiff-Appellant, by and through their counsel of record, hereby certify that they are not aware of any related cases pending in this Court.

Dated: January 2, 2025
**LAW OFFICES OF CHRISTIAN CONTRERAS**
**A PROFESSIONAL LAW CORPORATION**

By: _____
CHRISTIAN CONTRERAS
Attorneys for Plaintiffs-Appellants
Estate of Anthony Ray Lopez, et al.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 2, 2025 caused to be electronically filed the foregoing APPELLANT'S OPENING BRIEF with the Clerk of the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

Dated: January 2, 2025      **LAW OFFICES OF CHRISTIAN CONTRERAS**
                        **A PROFESSIONAL LAW CORPORATION**

By: _____
CHRISTIAN CONTRERAS
Attorneys for Plaintiffs-Appellants
Estate of Anthony Ray Lopez, et al.